| 97 398|
| 148 299|

VICTORIA E. BELLIS v. WATSON W. LYONS.

*Bills and notes—Possession—Presumption of ownership—Gift—Evidence.*

1. In trover against an administrator for the conversion of notes claimed to have been given to the plaintiff by the payee shortly before his death, it appeared that the plaintiff had been the housekeeper of the payee for some months prior to his death, he being a childless widower, and that the notes were found in her hand-satchel in a bureau drawer in the house of the payee, unindorsed by him. And it is held that the title to the notes will be presumed to have remained in the payee, and that a contrary presumption does not arise from . the possession of the plaintiff, she being the proper custodian of the property of the deceased until an administrator was appointed.

2. The failure of the plaintiff to assert her ownership of the notes at the time she executed a sworn petition for the appointment of defendant as special administrator, which stated that the notes belonged to the estate, and her statement when the will of the deceased was read, which gave her ample compensation for her services, that it was not what she had expected, and the fact that the deceased, a business man, made no transfer to her of the notes by indorsement or other writing, are held conclusive evidence against plaintiff's claim.

Error to Macomb. (Canfield, J.) Argued October 5, 1893. Decided November 10, 1893.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Crocker & Crocker*, for appellant, contended:

1. In cases of this character, the court cannot properly take the facts from the jury. Plaintiff had a right to have her side of the controversy assumed to be true, and in no way affected by counter-proofs; citing *Strand v. Railway Co.*, 64 Mich. 216; *Charon v. Lumber. Co.*, 66 Id. 68; *Guggenheim v. Railway Co.*, Id. 150.

*Eldredge & Spier*, for defendant, contended:

1. The presumption of ownership arising from possession disappears when there are circumstances accompanying it that rebut the presumption; citing *Banking Co. v. Bank*, 51 N. W. Rep. 596.

2. The notes all appear to have been given to the deceased, and the fact that he was at one time the owner is conceded, and such ownership must be presumed to have continued, and the burden is upon the plaintiff to show that there has been a change of title; citing Wood, Pr. Ev. § 205, p. 666; *Magee v. Scott*, 9 Cush. 148; *Sawyer v. Spofford*, 4 Id. 598; *Zwisler v. Storts*, 30 Mo. App. 163.

3. As against defendant, taking possession as special administrator, the claimed possession of the plaintiff, if unquestioned as a fact, would not raise the presumption of a change of title; citing Daniel, Neg. Inst. § 812; *Durein v. Moeser*, 36 Kan. 441; *Robertson v. Dunn*, 87 N. C. 191; *Tuttle v. Becker*, 47 Iowa, 486; *Merlin v. Manning*, 2 Tex. 351; *Ross v. Smith*, 19 Id. 171; *Dessaint v. Elling*, 31 Minn. 287; *Van Eman v. Stanchfield*, 10 Id. 255; *Price v. Brown*, 98 N. Y. 388; *Redmond v. Stansbury*, 24 Mich. 445; *Robinson v. Wilkinson*, 38 Id. 299.

GRANT, J. The defendant was the special administrator of one Thomas Morgan, deceased. As such he took possession of 22 promissory notes given to said Morgan in his life-time. Some of the notes were secured by chattel and real-estate mortgages. Plaintiff, claiming title to said notes by gift and delivery by Morgan, after demand and refusal on the part of defendant to surrender them, brought this action of trover to recover their value. The court directed a verdict for defendant, on the ground that plaintiff had failed to establish her ownership of the notes.

The estate inventoried $8,117, of which the real estate was $4,300, and the notes in question $3,624.75. Morgan

had been twice married.    He had had two children, both
of whom died without issue.    After the death of his wife
and children, he continued to live in his homestead, some-
times alone, and sometimes employing a housekeeper.
Eighteen months before his death he employed. plaintiff
as his housekeeper.    She lived with and took care of him
during the rest of his life.    He executed a will September
7, 1889, by which he devised his property to some neighbors
and relations, giving specific bequests to each.    By the
third clause of his will he provided as follows:

"In case my present housekeeper, Victoria Bellis, shall
remain with me as such housekeeper until my death, as
her compensation for so doing, in addition to such pay-
ments as I make her during life, I give and devise to her
that certain lot of land situate in the township of Ray, in
said Macomb county, Michigan, known as the 'Ray Ex-
change,' and, as well, the two pieces and parcels of land
adjoining the said 'Ray Exchange,' owned by me, and the
further sum of $500.    But in case she shall not so
remain with me as my housekeeper until my death, then
and in that case she is to have out of my estate only her
wages at the rate of one dollar per week."

After the specific bequests he bequeathed the residue of
his estate to all the legatees named in the will, except the
plaintiff, to be distributed between them in proportion to
the specific legacies given.    He died on the 81st day of
January following.    Plaintiff claims title by gift from
Morgan two or three days before his death.    Some of the
notes were payable to the order of Mr. Morgan, while
others were non-negotiable.    None of the notes were indorsed
by Morgan, nor were any of the securities assigned to
plaintiff; neither was there any written evidence of gift or
transfer.    Her counsel insist that there was evidence from
which a jury would be justified in inferring a completed
gift and delivery.    It therefore becomes necessary to give
the evidence upon which this claim is based.

Plaintiff herself testified that, when defendant came and

asked for the notes, they were in her hand-satchel in the bureau drawer, and that they had been there two or three days before Morgan's death.

One Chester Cooley testified that he had a conversation with Morgan the latter part of December, 1889, about plaintiff and his property; that he said to Morgan, in a laughing and joking way: " 'The woman is taking care of your house and you in good shape, and you, getting old and feeble as you are, ought to do well for her.' Says he, 'I have already.' Says I, 'What have you done?' And he says, 'I have given her somewhere near $3,000.'"

One Heydenreich testified that he borrowed $1,000 of Mr. Morgan, June 26, 1889, for which he gave him a note and real-estate mortgage; that Morgan asked plaintiff if he should let witness have it, to which plaintiff replied, "Yes;" and that Morgan said that he did not care, for it was her money. After this conversation Morgan loaned witness the money, taking the note and mortgage in his own name.

One Lathrop testified that he had a conversation with Morgan, but he could not fix the year nor the time of year it occurred, in which he said "if Mrs. Bellis did as well as she had, he'd give her all he had. He told about her doing first rate. I have heard him tell of giving to others."

One Miller, a brother of plaintiff, testified that Morgan asked him to talk with his sister in regard to going there to keep house for him; that he said, if she would go there and take care of him as long as he lived, he would give her his property; that witness did not communicate this, however, to the plaintiff; that he had heard plaintiff joke Morgan in regard to his having trouble to collect his accounts, and that Morgan said, "Well, when I am gone I would like to see what a time you will have in collecting these notes."

97 MICH.—26.

One Freeman testified that Morgan spoke to him several times about his will; that it was not satisfactory to him; that he said plaintiff should never want for anything while she lived; that he would provide for her so that she should have a good living while she lived, and that he intended to make another will.   These conversations were during his last illness.

One Hillock testified that he had a conversation with Morgan the day before he died, in which he said:  " ' I have made a will.   It is all wrong.   There is parties I have left some of my property to that it would not go to if I got able to make a will again.'   And he spoke about this lady, his housekeeper.   He said she had been very kind to him, and she deserved all he had.   He said, ' I have made some provision for her, but not such as I will do if I recover from this sickness.' "

When the defendant and the appraisers went to the house to make an inventory and appraisal of the estate, plaintiff told defendant, before he had alighted from his carriage, that he must not inventory these notes, as they belonged to her; that Morgan had given them to her. She was induced, however, to produce the notes, which she did from a hand-satchel kept in a bureau drawer belonging to Mr. Morgan, and to which she had the key.

The above is the substance of the evidence tending to support the plaintiff's claim.   There are, however, other undisputed facts bearing upon it.   On January 28, three days before he died, plaintiff wrote a letter, at Mr. Morgan's dictation, to Mr. Eldredge, which letter is as follows:

"I wrote you not long since, asking you to make a change in my executor in my will,—in place of Mr. Mowry, to put in Watson Lyons.   I want you to let me know by return mail if you have complied with my request."

February 3, 1890, plaintiff executed a sworn petition to

the probate court, praying for the probate of the will, in which she stated that the estimated value of the personal estate was $3,000, and of the real estate $5,000. At the same time she presented another petition, praying for the appointment of the defendant as a special administrator, in which she represented the personal estate to consist of live stock, notes, and mortgages, and that a chattel mortgage needed renewing, and, if not renewed on or before a certain date, it was liable to be lost to the estate, and that there was no one to take care of the notes, mortgages, and papers. The notes now claimed · by her are all that Mr. Morgan had. Of these, three were not at the time in his possession, but for some time previous to his death had been in the hands of attorneys for collection. At the time of executing the petition she made no claim to these notes. The will was at that time read to her, and she admitted that she then said " the will was not as I had been informed it was to be,—as it had been represented it was to me."

Plaintiff's counsel claim that the notes were given to her by Morgan two or three days previous to his death. The record, however, is barren of any evidence tending to show that he then delivered them. The presumption is that the title remained in him. The testimony of the witnesses Freeman and Hillock shows conclusively that he had not at that time delivered them to her. She was his housekeeper, and was the proper custodian of his papers and property upon the homestead until an administrator was appointed. It was indispensable to the plaintiff's ownership for her to show by clear and convincing proof, not only that Mr. Morgan had made statements showing · an intention to transfer the title, but that he had performed. his intention by actual delivery. The notes were in his house and in his bureau. Under these circumstances, her possession created no presumption in her favor. Possession

and production of the negotiable notes, unindorsed by him, would not have constituted evidence of ownership in a suit brought by her against him while living.   *Redmond v. Stansbury,* 24 Mich. 445.   Furthermore, her failure to assert ownership at the time she executed the sworn petition to the probate court; the statement therein contained. that these notes belonged to his estate; her knowledge that he had executed a will, and, when its provisions were read, her statement that it was not what she expected; the fact that Mr. Morgan, a business man, made no transfer by indorsement or other writing; and the ample compensation for her services given by his will,—are conclusive evidence against her claim.

Judgment affirmed.

The other Justices concurred.