FOUTS *et al.* v. NANCE.

No. 5217.    Opinion Filed February 8, 1916.

(155 Pac. 610.)

1. **GIFTS—Gift Inter Vivos—Proof—Requisites.** After the death of an alleged donor, in order to establish a gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift.

2. **SAME—Completion of Gift.** A "gift inter vivos" is complete where there is an intention to give, accompanied by a delivery of the thing given, and an acceptance by the donee.

3. **SAME—Completion by Delivery—Possession.** The mere finding of a note, the subject of a pretended gift, in a pigeon hole of a bank vault, inclosed in an envelope addressed to the claimant, 18 months after the date of the alleged gift and after the death of the alleged

donor, in the absence of any showing that the claimant had access to or control of such pigeon hole and vault, **held** not evidence tending to establish the possession of such note by such claimant.

4.    **SAME—Proof of Delivery—Declarations of Donor.** A gift cannot be established by proof of declarations of the claimed donor that he had given the property to the claimant, in the absence of an actual delivery, and the fact of delivery must be shown by other evidence than such declarations.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Custer County;*
*James R. Tolbert, Judge.*

Action by N. F. Fouts and another, as administrators of the estate of Shoe Boy, an Indian, deceased, against T. J. Nance. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

*A. J. Welsh, G. T. Webster,* and *J. C. Shull,* for plaintiffs in error.

*Phillips & Mills* and *George W. Cornell,* for defendant in error.

Opinion by RITTENHOUSE, C. On April 27, 1910, T. J. Nance borrowed $15,000 from an Indian by the name of Shoe Boy. On October 1, 1910, Shoe Boy died, intestate. N. F. Fouts and Perry Reynolds subsequently became the administrators of his estate, and instituted this action to recover the amount borrowed with interest. The defendant answered, admitting that he had borrowed the amount sued for, and that Shoe Boy was dead, but alleged that the indebtedness had been fully paid to Shoe Boy during his lifetime, to wit, on October 1, 1910, by the execution and delivery of two certain promissory notes signed by the defendant, T. J. Nance, and delivered to Shoe Boy, one for $5,000, which was afterwards paid to the former administrator of said estate, and the other for

$10,000, payable to the order of Darwin Hays, a half-brother of Shoe Boy. It is further alleged in said answer that it was the desire of Shoe Boy to make a gift *inter vivos* of the said $10,000 note to Darwin Hays; that it was the donor's intention to deliver said note to him as such gift; that defendant, at the instance and request of Shoe Boy, did execute said note to Darwin Hays, who is now the owner and holder thereof; that defendant withheld the payment of said note to Darwin Hays because of this litigation, and defendant alleges that it is his desire to pay said note to the proper party. The evidence in support of a gift *inter vivos* is, in substance, as follows: C. R. Strong testified that Shoe Boy came into his office on October 1, 1910, and stated that he was going to New Mexico for his health, and wanted $10,000 in money for Darwin Hays; Nance told him that he did not have the money, but that he would pay it to Darwin, and Shoe Boy suggested that he make Darwin a note for $10,000, and Nance at that time gave him a written document, which witness presumed was a will; Shoe Boy stated that he did not understand the will, but that he was leaving and wanted to give Darwin Hays $10,000 in cash or paper, and requested Nance to make a note; that witness understood that the papers were fixed up between Shoe Boy and Nance at that time; that he thought he was present when the renewal notes were delivered to Shoe Boy, because he was out of the office only a very short time that afternoon, but would not state that he had seen any notes delivered. The most he testified to was that he had seen them writing at an adjoining desk. W. C. Smoot testified that he was assistant cashier of the Oklahoma State National Bank; that W. C. Mills came to the bank about two weeks prior to the trial of

the instant case, and requested that he look through the papers of Darwin Hays which were in the vault; that upon an investigation of some papers, he found, in a pigeon hole marked by the letter "H," an envelope bearing the name of Darwin Hays, and in the envelope was a promissory note dated October 1, 1910, signed by T. J. Nance for $10,000, payable to Darwin Hays one year after date. Nowhere in the evidence does it appear that Darwin Hays had access to said vault or control of such pigeon hole or its contents. These pigeon holes were not locked. Little Wolf, Mrs. Little Wolf, and Red Leaf Woman each testified, in substance, that they had had a talk with Shoe Boy, and that he had told them that he loved Darwin Hays most of all, and that he intended to give him most of his money. William Penn testified that on October 5, 1910, he had a conversation with Shoe Boy in front of the Oklahoma State National Bank, in which Shoe Boy told him that he had given Darwin Hays a note for $10,000, signed by T. J. Nance, and that the note was given for favors that Darwin had been doing for Shoe Boy ever since Shoe Boy was quite a child. This constitutes, in substance, all the evidence that was offered in support of the alleged gift. Such evidence is very unsatisfactory on all the elements necessary to constitute a valid gift.

It is the general rule in every jurisdiction that after the death of the donor, in order to establish a gift *inter vivos*, the evidence must be clear, explicit, and convincing in support of every element needed to constitute a valid gift. 20 Cyc. 1224, and cases cited. This court, in the case of *Manning, Adm'r, v. Maytubby,* 42 Okla. 414, 141 Pac. 781, held that a gift *inter vivos* was complete where there was an intention to give, accompanied by a delivery

of the thing given, and an acceptance by the donee. An intention of the donor to give is not alone sufficient; the intention must be executed by a completed delivery. *Harris Banking Co. v. Miller et al.,* 190 Mo. 640, 89 S. W. 629, 1 L. R. A. (N. S.) 790.

This brings us to the main question involved in this action, and that is whether under the evidence there is any showing of a delivery of the note from Shoe Boy to Darwin Hays. In order to support such a gift, the evidence should be sufficient to render a finding of the fact of delivery reasonable, and should disclose some evidence reasonably tending to show the circumstances under which the delivery occurred so that the court may know whether the gift was absolute or conditional. The evidence which is urged in support of the gift, and especially of the fact of delivery, divides itself into two parts: (1) The evidence of Smoot that a note for $10,000, signed by T. J. Nance, was found in an envelope bearing the name of Darwin Hays in the vault of the bank. This evidence, it is contended, establishes the fact that Darwin Hays had possession of the note, and that the possession of the note was sufficient to show a delivery. (2) The second class of testimony offered was that of William Penn, that on October 5, 1910, in front of the Oklahoma State National Bank, he had a conversation with Shoe Boy, in which Shoe Boy told him that he had given Darwin Hays a note for $10,000, signed by T. J. Nance, and that the note was given for favors that Darwin had been doing for Shoe Boy ever since Shoe Boy was quite a child.

On the first subdivision of this testimony, we find that the only evidence in the record as to possession is the fact that a note was found in the bank in an envelope addressed to Darwin Hays. No evidence was offered that

this note had ever been in the possession of Shoe Boy, or that Shoe Boy had, in fact, delivered it to Darwin Hays. It was not made payable to Shoe Boy and indorsed by him, but Darwin Hays was made the payee of such note, and T. J. Nance the payor, and the note was found in a place to which numerous persons had access, and long after the death of Shoe Boy, and the record is silent as to who had rented the particular box or who had control over it. These circumstances do not show a possession on the part of Darwin Hays, and are no evidence of a delivery. It amounts to nothing, and has no weight on the question of delivery. In *Liebe v. Battmann,* 33 Or. 241, 54 Pac. 179, 72 Am. St. Rep. 705, it is said:

"Where, a man having committed suicide in his private room, a sealed and addressed envelope is found on his table, containing a promissory note in deceased's favor and generally indorsed by him, although the deceased undoubtedly intended to make a gift of the note to the addressee of the envelope, the intended gift must fail for imperfect delivery."

There must be some act or circumstance shown amounting to an actual delivery at the time of the gift. It is not the possession by the donee that is material, but the delivery to him by the donor. *In the Matter of Seitz's Estate,* 17 App. Div. 1, 44 N. Y. Supp. 836; *Conklin, Adm'r, et al. v. Conklin,* 20 Hun (N. Y.) 278; *Grey et al., Adm'r, v. Grey,* 47 N. Y. 552; *In re Bolin,* 136 N. Y. 177, 32 N. E. 626; *Kenney v. Public Adm'r,* 2 Bradf. Sur. (N. Y.) 319; *Drischler et al. v. Van Den Henden et al.,* 49 N. Y. Super. Ct. 508; *Chambers et ux. v. McCreery et al.,* 106 Fed. 364, 45 C. C. A. 322; *Bellis v. Lyons,* 97 Mich. 398, 56 N. W. 770; *Thomas v. Tilley et al.,* 147 Ala. 189, 41 South. 854; *Hecht v. Shaffer,* 15

Wyo. 34, 85 Pac. 1056; *Bean v. Bean,* 71 N. H. 538, 53 Atl. 907.

We come now to the declaration of Shoe Boy of October 5, 1910, at which time it is contended that Shoe Boy told the witness William Penn that he had given Darwin Hays a note for $10,000, signed by T. J. Nance, and that the note was given for favors that Darwin had been doing for Shoe Boy ever since Shoe Boy was quite a child. It will be remembered that this conversation was had several days after the alleged gift, and the alleged donor was speaking in the past tense, showing clearly that the declaration was made subsequent to the alleged gift. Such declarations are admissible in a case of this character, for the purpose of showing an intention to make a gift, but proof of an intention to give is not sufficient to establish a gift. Before a gift *inter vivos* is fully executed, there must be a delivery of the thing given where it is possible to make a manual delivery, as in the instant case. A declaration by an alleged donor that he had given to the donee a certain note is not, in itself, sufficient evidence to establish the delivery of the note alleged to have been given. The identical question was before this court in the case of *Apache State Bank v. Daniels,* 32 Okla. 121, 121 Pac. 237, 40 L. R. A. (N. S.) 901, Ann. Cas. 1914A, 520, in which the court was passing upon declarations made in a gift *causa mortis,* and in that case the court defined the policy of this state on the question of proof as to delivery in cases of gift *inter vivos* and *causa mortis.* The only difference between such gifts is that the latter is made in contemplation of death and is revocable, while a gift *inter vivos* is not, and the court in passing upon a delivery in that case said:

"A gift *causa mortis* is not mentioned in our statutes, and therefore comes to us as a part of the common law; but, in taking it, we must take it in connection with the public policy of our state as evidenced by its statutes. The common law in turn gets the idea from the Roman law, and in the Roman law, according to the Institutes of Justinian, five witnesses were required, in addition to the delivery of the donation. At the common law, however, no specific number of witnesses is required; but the gift must be established by clear and convincing evidence, and it must be accompanied by a delivery of the subject-matter. Mere words, of course, cannot constitute a gift, either *inter vivos* or *causa mortis,* because that would conflict with the fundamental notion of consideration as the basis of contract. Mere words, unaccompanied by delivery, could only be a promise; and, there being no consideration, the promise could not be enforced, and therefore the gift would not be complete. In order that the gift be valid, it must be completely executed, because if there remains anything to be done, the donor may refuse to do it. When a gift has been completed by the actual delivery of the subject-matter, it, of course, is valid, and these principles apply to a gift *causa mortis* as well as *inter vivos.*"

In *Keepers v. Fidelity Title & Deposit Co.,* 56 N. J. Law, 302, 28 Atl. 585, 23 L. R. A. 184, 44 Am. St. Rep. 397, the court said:

"We are not willing to approve the extreme views which have been adopted in the cases cited. We agree with the sentiment expressed in *Ridden v. Thrall,* 125 N. Y. 572 [26 N. E. 627] 11 L. R. A. 684 [21 Am. St. Rep. 758] that 'public policy requires that the laws regulating gifts *causa mortis* should not be extended, and that the range of such gifts should not be enlarged.' When it is remembered that these gifts come into question only after death has closed the lips of the donor; that there is no legal limit to the amount which may be disposed of by means of them; that millions of dollars worth of

property are locked up in vaults the keys of which are carried in the owners' pockets; and that, under the rule, applied in those cases, such wealth may be transferred from the dying owner to his attendant, provided the latter will take the key and swear that it was delivered to him by the deceased for the purpose of giving him the contents of the vault—the dangerous character of the rule becomes conspicuous. Around every other disposition of the property of the dead, the legislative power has thrown safeguards against fraud and perjury; around this mode, the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily proven devices."

In the case of *Chambers et ux. v. McCreery et al.,* *supra,* it is said:

"A gift cannot be established by proof of declarations of the claimed donor that he had given the property to the claimant, in the absence of an actual delivery, and the fact of delivery must be shown by other evidence than such declaration."

In the case of *Wheatley v. Abbott et ux.,* 32 Miss. 343, the court held:

"The mere declaration of the donor that he has made a gift of a personal chattel, unaccompanied by acts showing a delivery, or an absolute parting with all dominion and interest in it, are insufficient to establish a valid gift. * * *"

Thornton in his work on Gifts and Advancements, section 231, says:

"Bare declarations are not sufficient to make a gift; and, therefore, the person on whom the burden devolves to establish a gift must prove something more than the declarations of the donor that a gift has been made; he

must show some act from which the jury may presume a delivery."

In *Smith v. Burnet*, 35 N. J. Eq. 314, it is said:

"A gift without consideration requires, as an essential element, a delivery. To a mind unacquainted with the technical rule that in law an actual or symbolical tradition of the chattel is necessary to transfer the title, such an act would ordinarily not appear important. A statement, therefore, that a gift had been made would not, I think, of itself, import a compliance with all the technical requirements of a legal gift. The Supreme Court of Massachusetts has held that the delivery of a chattel necessary to the validity of a gift *causa mortis* was not proved by subsequent declarations of the deceased made shortly before his death to a person not connected with the gift. *Rockwood v. Kiggin*, 16 Gray (Mass) 402."

In *Rockwood v. Wiggin et al., supra*, the court set aside a verdict supported solely by subsequent declarations of the alleged donor, saying:

"The declarations of the deceased to Thais Stoddard, as shown by the defendant in her testimony, are not competent evidence to establish the alleged *donatio causa mortis*. The fact of delivery must be proven by other evidence than by mere declarations of the deceased to a person disconnected with the transaction, of the character stated in the report of the evidence in the present case. The language used by deceased to this witness would seem rather to indicate that she had the purpose to dispose of her property by a will. Such gifts being really of a testamentary character, and operating in favor of the donee much as a legacy, and yet without the safeguards that the statute has thrown around wills, are not to be sustained, unless clearly established by the proof of all the facts essential to their validity."

In the case of *Evans et al. v. Lipscomb et al.*, 31 Ga. 71, 109, .the court says:

"We hold, then, the general rule to be that there must be, to constitute a valid parol gift of a chattel, an actual delivery of the chattel, at the time of the gift, accompanied by words characterizing the act as a gift, and, further, that the act and the words spoken must be such as to signify clearly the transfer of dominion over the chattel from the donor to the donee. Such, we say, is the general rule; whether or not there may be declarations and circumstances, not precisely contemporaneous, but equivalent, as to intention and transfer of dominion, we leave to be determined as cases may arise. In this case we hold that the mere declarations of the alleged donor that she had given, etc., are insufficient to establish the gift."

In *Bryant v. Ingraham*, 16 Ala. 116, it is said:

"In order to perfect a parol gift of a chattel, to pass the title from the donor to the donee, the donor must part with the possession and control of it, and the possession must be delivered to the donee, or to some one for him. *Sims v. Sims*, 2 Ala. 117; *Sewell v. Glidden*, 1 Ala. 52. The mere declaration by one that he would give or had given a chattel to another, when it is shown that the donor or owner never parted with the possession or control of it, would not be sufficient to establish a title by gift. The charge, requested of the court, that such declaration, connected with the further statement that the owner said he had hired the slave of his donee, would perfect the gift, although there had been no actual delivery of the same, was correctly refused; for if parting with the possession and control is necessary to perfect a parol gift, mere declarations by the donor cannot supersede the necessity of this act. It is the act of delivery, accompanied with the intention to give, that perfects a parol gift."

In *Medlock v. Powell*, 96 N. C. 499, 2 S. E. 149, it is said in the syllabus:

"In order to perfect a gift of personal property, there must be an actual delivery, if the nature of the property will admit of an actual delivery, and, if not, then some act must be done equivalent to actual delivery, and which will have the effect to pass the title to it."

In *Ewing v. Ewing*, 2 Leigh (Va.) 337, Judge Carr, in writing his opinion, says:

"But if a host of witnesses had proved that the testator declared he had given the bond or the money to his nephew, it would have been of no avail, without some proof of delivery. A verbal gift of a chattel, without actual delivery, does not pass the property to the donee. This is the settled doctrine of the modern decisions. * * * Proceeding, then, upon the ground that we may look into this bill of exceptions at all, I think it furnishes as strong a case as can well be imagined of a verdict found contrary to evidence. * * *"

In *Smith v. Burnet*, 34 N. J. Eq. 219, 223, the court says:

"His claim to the stock, then, rests upon the testimony of Louisa B. Riker that the testator declared that he intended to give the stock to him, and afterwards, that he had given it to him. This, of itself, is not enough to support the claim of a gift *inter vivos*. For aught that appears, he may have changed his mind before his death. Until delivery and acceptance, there is *locus penitentiae* in such cases."

In *Johnson v. Spies*, 5 Hun (N. Y.) 468, it is said in the syllabus:

"In the case of a gift *inter vivos*, of a chose in action, it is incumbent upon the alleged donee to show, not only declarations by the former owner importing a gift, but an actual or constructive delivery."

In *Hunley v. Hunley*, 15 Ala. 91, it is said:

"The declarations of a grandfather that he had given certain slaves to the children of his son, will not constitute a valid gift, in the absence of proof of an actual delivery, the slaves being found in his possession, at his death. The fact that the slaves were under the control of the father of the children will not vary the case, there being no proof that they were delivered to him for the purpose of consummating the gift."

In *Holsberry v. Harris*, 56 W. Va. 320, 49 S. E. 404, it is said:

"The evidence in case of a parol gift from father to child should be direct, positive, express, and unambiguous, and its terms clearly defined. Loose declarations of the father, without explanation, are not sufficient evidence of a gift."

*In re Schiehl's Estate*, 179 Pa. 308, 33 Atl. 181:

"A gift of a mortgage by mortgagee to mortgagor is not shown by testimony of declarations by the mortgagee that she intended and had given the mortgage to the mortgagor, where the mortgage was retained by the mortgagee during her life, and interest paid thereon by the mortgagor."

In the case of *Yancy v. Field*, 85 Va. 756, 8 S. E. 721, the court in the syllabus says:

"A gift of certain bonds by one a short time before his death will not be sustained, where they were not delivered, nor the means of obtaining them; although subsequent to the time of the alleged gift the donor declared to a third party that he had given the bonds in question to the claimant, and the administrator of his estate acknowledged that such gift had been made."

A thorough investigation reveals the fact that there are two distinct lines of adjudicated cases on this subject;

one holding that bare declarations are not sufficient to prove a delivery, but that some act or circumstance must be shown from which the jury may draw the inference of a delivery, and the other that declarations are sufficient to prove delivery. We have heretofore cited cases in support of the former view, and in support of the latter the following cases are authority: *Sprouse v. Littlejohn,* 22 S. C. 358; *Hansell v. Bryan et al.,* 19 Ga. 167; *Schauer et al. v. Von Schauer* (Tex. Civ. App.) 138 S. W. 145; *Lord v. New York Life Ins. Co. et al.,* 95 Tex. 216, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827; *Rooney, Adm'r, v. Minor,* 56 Vt. 527; *Grangiac, etc., v. Arden,* 10 Johns. Ch. (N. Y.) 293, and numerous other cases not necessary to cite.

To us it is apparent that the better reasoning and the weight of authority, as well as the policy of our state as defined by *Apache State Bank v. Daniels, supra,* demand that the strict rule of the common law be not relaxed, and that proof of some act or circumstance in addition to bare declarations be necessary in order to prove the delivery; and where no act or circumstance is shown from which the jury may infer delivery, the bare declaration of a donor to a third person subsequent to the alleged gift is insufficient to prove such delivery. A casual reading of the record in this case will convince one of the propriety and wisdom of adhering strictly to the common-law rule that bare declarations are insufficient to prove a delivery.

We concede that, while the evidence of a gift should be clear and convincing, yet if there is any evidence reasonably tending to prove the fact of a gift in the instant case, then the court was justified in submitting the ques-

tion to the jury. In the view we take of the case, there is an absolute want of any evidence to establish the fact of delivery or an acceptance by the donee, which are two of the most important prerequisites to a valid gift, and the question of whether or not there was any evidence on this point is a question for the court.

The judgment should therefore be reversed, and the cause remanded, with instructions to the trial court to proceed in conformity with the views herein expressed.

By the Court: It is so ordered.