MEMORANDUM OVERRULING MOTION FOR NEW TRIAL
LUHRING, J.
The motion for new'trial presents the question whether or not Frank Casey, the deceased, made a gift inter vivos to his wife, Mrs. Nettie Casey, of certain securities of the par value of approximately $250,000.
“The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on .the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee acceptance. The subject of the gift may be chattels, choses in action or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee it may be given, as has been held, by the delivery of a receipt acknowledging payment. . . . The acceptance also may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, *181 which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated.” Beaver v. Beaver, 117 N. Y. 421, 428-429; see, also Hahn v. Dean, 108 Me. 555.
It may be assumed that Mr. Casey’s declarations, as testified to by Mr. and Mrs. Robert Engle, clearly establish his intention to give the securities to his wife. As we have seen, however, an intention to give is not alone sufficient. There' must be delivery. It is conceded by counsel for Mrs. Casey that the mere declarations of gift are insufficient to establish delivery of the property given, and that there must be some act or circumstances from which an inference of delivery may be made. Plaintiff’s Brief, p. 8. See, also, Atchley v. Rimmer, (Tenn.) 255 S. W. 366; Fouts v. Nance, 55 Okl. 266; Chambers v. McCreery, 106 Fed. 364, 370.
The securities, which are the subject of the gift, were at the time in a safety deposit box, which was registered in the names of Frank Casey and Nettie C. Casey, and to which each had equal access, because each had a key. For a long time prior to the alleged gift inter vivos, a safety box was maintained by them in the same manner and in the same bank, and each had a key. But during all of that time, it is conceded that the securities in this box were the sole property of Frank Casey. There was no actual manual delivery of the securities to Mrs. Casey, nor was there symbolic delivery by his surrender of his key to the safety box to her.
It is contended by the plaintiff that as the securities were in the possession of Mrs. Casey at the time of the alleged gift by reason of her having a key to the safety box in her possession, it was not necessary that she go through the useless formality of an actual surrender of the securities or the key to *182 Mr. Casey, so that he might make redelivery thereof to her, in order to effect a valid delivery of the securities. This is true, but, under such circumstances, it is equally true that the evidence to establish the gift must be clear and satisfactory that the donor had relinquished all control of and claim to the property which is the subject of the gift. The delivery may be proved by circumstances, but the circumstances proved must clearly and satisfactorily show delivery. Gray v. Gray, 111 Me. 21; 28 C. J. 638, Sec. 28.
“To establish a gift there must be evidence free from personal interest and not equivocal in character that the property claimed was delivered to donee during the donor’s life, and this rule is not met by the possession of the property, where the possessor has had an opportunity to acquire the possession by other means. In order for this to obtain, it is not necessary that the act of the possessor was improper or dishonest, but for reasons of public policy the proof must show the possession was obtained by delivery with an intention to give.” Atchley v. Rimmer, supra. Therefore, the mere possession of the key to the box, which she had for years, is not sufficient to establish a delivery of the securities to Mrs. Casey, unless it appears by satisfactory evidence that Mr. Casey actually relinquished his dominion and control over them to Mrs. Casey, so as to divest his right and title and vest the same in her. 28 C. J. 634, Sec. 23. “There can be no gift which the law will recognize where there is reserved to the donor either expressly or as a result of the circumstances and conditions attending the transaction, a power of revocation or a dominion over the subject of the gift. There must be no locus poenitentiae and there is always a locus poenitentiae when the supposed donor may at any time undo what he has done. ... 7/ the donor retains dominion over the thing given precisely as he had control over it, there is obviously no perfected gift, because there has been no change in possession and there is still an opportunity to recant.” (Our Italics.) Baurnschmidt v. Baurnschmidt, 98 Md. 35.
*183 The immediate question under consideration here is whether or not the facts and circumstances in evidence satisfactorily and unequivocally establish that Mr. Casey relinquished all control and dominion over and claim to the securities so as to pass the title to Mrs. Casey.
Mr. and Mrs. Casey were married November 1st, 1908. They had no children. Mrs. Casey had a son of a previous marriage who was born on the 12th day of October, 1886. He is living and is the father of Robert Engle,- who testifies to the declarations of gift made by Mr. Casey.
On the 9th day of September, 1927, Frank Casey executed a will in which he disposed of his entire estate to the National Metropolitan Bank of Washington as trustee to pay the income to his wife, Nettie Casey, for life, and at her death to his sister, Mrs. Topliffe, for her life, and upon the death of the last survivor as between the wife and sister, the trustee was directed to pay over and to distribute the remainder of the trust estate to the children of Landra B. Platt and James B. Platt. With respect to the stock of the Stone Straw Company, the will authorized the trustee to vote the same but prohibited the sale, pledge or conversion of the stock except upon the unanimous consent and approval of his wife, Nettie Casey, Karl Casey, James B. Platt and Landra B. Platt, or of so many of them as may be then living but provided that the proceeds of any such sale, pledge or conversion were to become part of the corpus of the trust estate so created. Landra B. Platt and James B. Platt, whose children are named as beneficiaries under this will, are cousins of Frank Casey. The Stone Straw stock and the Stoneheart Company stock were the sources of Mr. Casey’s fortune.
Mr. Casey suffered a stroke of apoplexy in his home at the Kenesaw Apartments on the 16th day of December, 1928, and was taken to the Emergency Hospital on the-19th day of December, 1928. He remained in the hospital until the 8th day of July, 1929, when he was discharged and returned to his home.
*184 During his stay at the hospital and on the 31st day of December, 1928, Mr. Casey executed a power of attorney whereby he nominated and appointed Mrs. Casey as his attorney to make deposits and draw checks in connection with his account with the National Metropolitan Bank of Washington. At this time, and for sometime prior thereto, Mr. and Mrs. Casey jointly maintained safety deposit box No. 607 in the Park Savings Bank wherein Mr. Casey kept his bonds and securities. At the time of the execution of this power of attorney, there were in this safety deposit box securities owned by Frank Casey of the par value of $71,000.
Mr. Casey again became ill on the 25th day of May, 1931, and again entered the Emergency Hospital where he remained until the 8th day of June, 1931. He was discharged on that day and went to his home and again became ill and reentered the Emergency Hospital on the 10th day of June, 1931, where he remained until his death on the 7th day of September, 1932. It was during the interval between the 8th and 10th days of June, 1931, and while Mr. Casey was at his home in the Kenesaw, that the plaintiff, claims the alleged gift inter vivos was made. Her grandson, Robert Engle, testifies to declarations made by Mr. Casey between those dates, which were in substance that the securities belonged to Mrs. Casey.
On the 8th day of June, 1931, when Mr. Casey was discharged from the hospital there were securities in the safety deposit box of the par value of $197,000.
There is testimony concerning the activities of Mrs. Casey after her appointment under the power of attorney of December 31st, 1928, until the death of Mr. Casey in September, 1932.
Before she was given the power of attorney, she had not concerned herself with her husband’s business affairs and investments. She did not enter the safety box. at the Park Savings Bank, although she had a key. She did not buy or sell securities. Mr. Casey was the active head of the family. After the 31st day of December, 1928, Mrs. Casey became *185 active and continued to be the directing head of the family until Mr. Casey’s death. She bought, sold and exchanged bonds through Mr. Hume who was representing the Guaranty Company of New York. The transactions would be conducted in her name and on occasions the Guaranty Company would return corrected confirmations reciting that the transaction was with Frank Casey, by Nettie Casey. Later and after Mr. Hume represented the McKnew Company, and some time the latter part of 1931, Mrs. Casey dealt with that company in the purchase, sale and exchange of securities. These transactions were in her own name, and were executed by Mr. Hume. In handling these transactions, Mrs. Casey, acting under the power of attorney, freely drew checks on Frank Casey’s account in the National Metropolitan Bank, signing such checks, Frank Casey, by Nettie Casey, attorney. On three occasions, at least, subsequent to the 10th day of June, 1931, she purchased bonds of the par value of $15,000 by checks drawn as attorney on the account of Mr. Casey in the National Metropolitan Bank. These bonds were also placed in the safety box at the Park Savings Bank with the other bonds and securities. She frequently made deposits in that account. She entered the safety box whenever necessary to remove securities for sale and exchange, and as frequently entered the box when necessary to deposit therein the newly acquired securities. When the safety box No. 607 became too small for the purpose, a large box No. 375 was rented and held in the joint names of Mr. and Mrs. Casey. Later, and on the 27th day of October, 1930, an additional box No. 1216 was acquired and held by them jointly. Subsequently, and on February 24, 1932, after the alleged gift inter vivos, the box No. 1216 was changed to a larger box No. 1526, and box No. 375 was likewise changed to a larger box No. 1516, both of which were held in the joint names of Mr. and Mrs. Casey, and to which each had a key.
Mr. Casey did not enter either of the safety boxes from the time of the signing of the power of attorney until his *186 death. On one occasion during that period, Mr. Casey accompanied Mrs. Casey to the bank and sat at a table while she went into the vault, obtained the box and brought it to the table where he was seated. The box was then opened in his presence.
Mrs. Casey frequently entered the box to clip the maturing coupons. She deposited them to her account in the Park Savings Bank. Mr. Casey would endorse his monthly salary checks and she would deposit them to her credit or use them for household and other expenses. All this was done with the knowledge of Mr: Casey.
During this period, and when Mr. Casey was able to travel, they made trips to Atlantic City, San Antonio, Texas, and Los Angeles, California. Mrs. Casey, on these occasions, attended to the payment of the hotel bills and other travelling expenses. Mr. Casey was willing that she do this, and relied upon her to attend to such matters. She, in a word, was the business manager for Mr. Casey, and his agent. However, he refused her request and the request of Mr. Hume to give her power of attorney to transact his business with the Guaranty Company.
Mr. Casey closed out an account he had with the Park Savings Bank on the 9th day of June, 1931, by giving Mrs. Casey check for the balance of $2,047.11 because, as they decided, it was useless for him to keep an account at that bank when Mrs. Casey was writing all the checks.
In May or June, 1931, Mrs. Casey made a loan of ten thousand dollars to her relatives in Los Angeles, California, which was secured by a mortgage on real estate located there. The note was made payable to Mrs. Casey and the mortgage was in her name. The $10,000 was drawn from Mr. Casey’s account in the National Metropolitan Bank, by Mrs. Casey’s check as attorney. This note and mortgage were placed in the safety box.
However, the evidence does show, and I think conclusively, that both before and after the alleged gift inter vivos, *187 Mrs. Casey always consulted her husband with reference to the investments and acquainted him with the details of her activities. She told him of the bond transactions, and both she and Mr. Hume frequently consulted with him in respect thereto. She would exhibit to him the deposit slips showing the deposits of coupons, and he knew about the Los Angeles loan, and characterized it as a good investment. He was shown and examined all confirmations and corrections relating to the transactions with the Guaranty Company, as well as those with the McKnew Company.
These are in the main the facts and circumstances upon which the plaintiff relies to establish that Mr. Casey relinquished all dominion and control over the securities and thereby irrevocably passed the title to Mrs. Casey.
At no time after the alleged gift did Mrs. Casey have the exclusive possession of the securities. On the contrary, we find that she recognized the rights of her husband some time in June, 1931, when she requested that he give her power of attorney to transact his business with the Guaranty Company of New York, and again in February, 1932, when she changed the boxes to larger ones and had the new boxes registered in the names of Frank Casey and Nettie Casey. Furthermore, she conferred with him with respect to the various investments, and there is no evidence that she acted contrary to his judgment or advice. This was the conduct of an agent, and that is true even though she was permitted frequently to buy, sell and exchange the securities belonging to Mr. Casey in her own name. Under the circumstances here disclosed, it was but natural that Mr. Casey should select his wife to look after his business affairs. See Beaver v. Beaver, 117 N. Y. 430. There is no evidence that Mrs. Casey, herself, treated the securities as her property, or listed them for taxation in her own name or otherwise asserted a claim of ownership prior to the death of Mr. Casey in 1932. From the day she received the power of attorney authorizing her to sign his name to checks for the withdrawal of his funds in the National Metro *188 politan Bank until the day of Frank Casey’s death, the activities of Mrs. Casey in connection with these securities were exactly the same, and this is true both before and after the alleged gift. There was no change. She recognized the dominion and control of her husband over these securities by always consulting him and advising with him whenever she desired to buy, sell and exchange any of the stocks or bonds.
The safety boxes were rented in the joint names of Mr. and Mrs. Casey. Each had a key. This arrangement had continued over a period of years prior to Mr. Casey’s death, and was in existence at the time of the alleged gift and continued thereafter. Certainly such an arrangement wrought no change in the dominion Mr. Casey previously had over the securities. “He could have taken every bond and certificate of stock out of the box without the assent or even against the protest of his wife, and could have disposed of them just as he pleased. The fact that the wife had a key to the box did not place any restriction on the husband’s control over the property contained in the box.” Baurnschmidt v. Baurnschmidt, supra. So far as the evidence discloses, Mr. Casey retained dominion over these securities precisely as he had control of them for over two years immediately following the execution of the power of attorney on December 31st, 1928, and before the alleged gift was made.
The will executed by Mr. Casey, and which has been admitted to probate, may be considered very properly in this connection. This will furnishes an index to the wishes, desires and intentions of Mr. Casey. First of all he made ample provision for his wife so long as she might live. He gave all the income from all the property he owned to her for life. At her death, he desired that his property should go to his own relatives. He knew, of course, that by leaving the corpus of his estate to Mrs. Casey, it would go to her son, and, perhaps, grandson at her death. For reasons known to him and disclosed by the evidence he did not wish this to happen, and so made certain it would not by his will. Is it, therefore, to *189 be supposed that he would make a gift inter vivos of practically all of his property to Mrs. Casey, when he had declared in solemn form that she should have only the income for life?
The Court is of the opinion that the evidence falls far short of establishing delivery, an essential element of a gift inter vivos, and, therefore, the motion for a new trial is overruled.