**Richmond.**

YANCEY V. FIELD.

February 14th, 1889.

1. GIFTS—*Donatio causa mortis—Delivery.*—To render a gift effectual, the thing given, or the means of obtaining it, must be delivered by the donor to the donee, or to his agent, and accepted by him, and this is true, whether it be intended as a gift *inter vivos*, or a gift *mortis causa.*
2. IDEM—*Previous possession.*—Nor will previous possession of the thing given suffice, delivery by the donor being essential.
3. IDEM—*Donor's declaration—Executor.*—It is well settled that donor's declaration that he had given the thing in question, will not perfect a gift incomplete for want of delivery. Nor will the subsequent recognition of the gift by the donor's executor avail.

This was an appeal from a decree of the circuit court of Culpeper county, rendered upon the petition of Henry S. Field and Edmonia, his wife, filed in the chancery cause of *Yancey* v. *Field,* pending in the said court. The suit was originally commenced by the late James P. Yancey for a settlement of the estate of the late Judge Richard H. Field, and in the progress of the cause, the plaintiff died. The petition set forth that the said James P. Yancey, in his life-time, was a creditor of the estate, as evidenced by *two bonds*—one for $1,986, and the other for $120, with interest—and that a short time before his death, he gave to the female petitioner, who was his niece, "the said indebtedness." It was also averred that when the gift was made, the bonds could not be delivered, as they had been previously filed with the master commissioner in the said suit of *Yancey* v. *Field.* And the prayer of the petition was that the administrator of Yancey be made a defendant to the petition; that the

said bonds, by order of the court, be endorsed for the benefit of the female petitioner, and that all moneys payable on account of the same, be decreed to be paid to the petitioners.

The administrator answered the petition, denying that the bonds in question had been given to the female petitioner, as alleged in the petition, and upon the issue thus made testimony was taken.

Mrs. Field was herself, by consent, examined as a witness, and in her deposition she stated that she was a niece of James P. Yancey, deceased, and at one time lived with him ; that she was with him at the time of his death, and was frequently with him during his last illness. She also said : "My uncle gave me the amount of his debt against the estate of the late Judge Field. About two weeks before his death, he called me to him and said : 'I want to do something for you to help you, and I give you this debt against Judge Field's estate. *I don't know what it is,* but whatever it is I want you to have it.' He said we were living on Judge Field's land, and it would aid us in getting a part of the land as a home."

A witness, George M. Wood, testified that he was a neighbor and friend of the decedent, and either saw or heard from him every day, or every other day, during the last two weeks of his sickness; that on one of these occasions, when at the house of the decedent, the latter sent for him and said to him that his days were numbered, and that he expected to live but a short time; that he held *a bond* against the estate of Judge Field, which he had given to his niece, Mrs. Edmonia Field, hoping she might be enabled thereby to buy a portion of the Field farm for a home.

There was also evidence tending to show that the decedent died free of debt, leaving a valuable estate, and that his son and sole heir-at-law and distributee, J. W. Yancey, the administrator and appellant here, was not only present at the time the conversation between decedent and Mrs. Field, above alluded to, took place, but that after his father's death, he mentioned to one

or more of the witnesses that the bonds in question had been given by his father to Mrs. Field, and that he had carried into execution a similar gift made about the same time, and under similar circumstances, by his father to a young lady, who was a sister of Mrs. Field.

When the matter came on to be heard, the circuit court, by its decree, sustained the validity of the gift, and decreed accordingly, whereupon the administrator obtained an appeal and *supersedeas.*

*G. D. Gray,* for appellant.

*J. G. Field,* for appellees.

LEWIS, P. (after stating the case), delivered the opinion of the court.

The decree appealed from is clearly erroneous. This conclusion, however, has been reached not without reluctance. Had we the authority to execute the alleged gift, or, in other words, to give effect to the manifest intention of the decedent to aid this worthy lady, the female appellee, the court without hesitation would affirm the decree. But we have no such authority. Our province is not to make law, but to administer it, and we must, therefore, decide this case according to the settled law as it is written, and not permit a hard case to make bad law.

The appellees themselves admit in the petition filed by them in the court below that there was no delivery by the decedent of the bonds in question, and this of itself is decisive against them, whether the case be viewed as an intended gift *inter vivos* or *mortis causa.* The authorities uniformly hold that to render a gift effectual, the thing given, or the means of obtaining it, must be delivered to the donee or to his agent, and accepted by him. The donor must divest himself of all dominion and control over it, and in this respect there is no distinction between the two

classes of gifts above mentioned. In either case actual delivery, or its equivalent, is indispensable. Without a delivery the transaction is not valid as an executed gift, and being without consideration, it is not a contract to be executed. In short, it is a mere nullity.

Thus, in a case where the donor told her servant to take the keys of her dressing case and deliver her watch and trinkets which it contained to the plaintiff, and the servant took the keys, but kept them in her possession until the death of her mistress, it was held by Sir John Romilly, master of the rolls, that this was not a good gift *mortis causa* for want of a sufficient delivery. *Powell* v. *Hellicar,* 26 Beavan, 261.

In another case the would-be donor, shortly. before her death, spoke to her son of her bank-book, which at the time was in her daughter's possession at another place, and in which was entered a credit of several hundred dollars, and told him to get it and to settle the bills, and if anything was left to divide it among her three children. It was held that this was not a sufficient delivery to sustain the gift, notwithstanding the book was out of the reach of the decedent, and for that reason could not be actually delivered at the time of the conversation in question, and notwithstanding it was in the possession of one of the intended donees.

Blackstone says a true and proper gift is always accompanied with delivery of possession, and takes effect immediately. 2 Comm. 441. Indeed, this principle, which was derived from the Roman civil law, has never been questioned as a part of the common law since Lord Hardwicke's decision in the leading case of *Ward* v. *Turner,* 2 Ves. Sen. 431. And the only difference between a gift *inter vivos* and a *donatio mortis causa* is that the latter is made under apprehension of death, and to it certain implied conditions subsequent are annexed, upon the happening of any one of which the donation is defeated; that is to say, it is defeasible (1) by actual revocation by the donor in his life-time; (2) by the donor's surviving the apprehended peril; (3)

by his outliving the donee; and (4) by the occurrence of a deficiency of assets necessary to pay the debts of the donor after his death. In all other respects the two classes of gifts stand upon the same footing; and the reason why a delivery in either case is required is because the change of possession strengthens the evidence of the gift, and is essential for the prevention of fraud and perjury. And because of the opening which this mode of transfer affords to fraud, the law watches it with jealousy, and does not permit it, with its attendant uncertainties, to take the place of wills. Therefore any gift which does not take complete effect by the transfer to, and acceptance by, the donee of the possession and title of the donor in the lifetime of the latter, is testamentary in its character, and good only if made by will. *Basket* v. *Hassell,* 107 U. S. 602.

Indeed, we have a statute which expressly enacts that no gift of any goods or chattels shall be valid, unless by deed or will, or unless accompanied by actual possession, and that if the donor and donee reside together, possession at their residence will not suffice. Code, sec. 2414.

As to what constitutes a sufficient delivery of possession, there is some conflict of authority. The question generally depends upon the nature and situation of the thing to be delivered, and is therefore to be determined upon the particular circumstances of each case. There may, however, be a constructive delivery. Thus, the contents of a trunk, even when they consist of bonds or other *choses in action,* may be given by delivery of the key of the trunk, or goods *in transitu* by delivery of the bill of lading, if the donor's intention to make the gift clearly appears. And the gift of a bond may be effected not only by a delivery of the bond itself, but by a delivery out of the donor's control of an instrument without which *he* could not recover the fund from his debtor or agent. 1 Lead. Cas. Eq. 905, notes to *Ward* v. *Turner.*

This is illustrated by the case of *Elam* v. *Keen,* 4 Leigh, 333. In that case the donor, holding an attorney's receipt for a bond

in suit, which was filed with the papers in court, told the plaintiff he could have it, and delivered him the receipt, and this was held a sufficient delivery to constitute a valid gift. The court said there are many things of which actual, manual tradition cannot be made, either from their nature or their situation at the time, and that the law does not intend to take from the owner the power of disposing of these, but merely requires that he shall do what, under the circumstances, will in reason be considered equivalent to an actual delivery. Accordingly, said Judge Carr, "I am of opinion (though certainly not without doubts) that the delivery of the receipt accompanying the gift made it a valid gift. The bond itself could not be delivered; it was in court—in the custody of the law. The receipt was its representative." It was "the true and effectual way of obtaining the use of the subject."

It is manifest, however, that but for the delivery of the receipt the gift would not have been sustained, although the bond itself could not be delivered; for in *Ewing* v. *Ewing,* 2 Leigh, 337, it had been previously decided that the alleged gift of the bond in question in that case was not valid, because, in the language of Judge Carr, it "was expressly proved that the bond never was delivered nor any written transfer made." And Judge Green, in his opinion, said that "if the subject of the gift be incapable of delivery, it cannot be given by parol, but must be transferred by some writing and a delivery of that writing." Nor are we aware of any authority for holding that a mere verbal declaration of a gift, unaccompanied by any act or circumstance clearly showing a surrender and acceptance of dominion over the article, constitute a valid gift under any circumstances.

A strong case upon this subject is *Miller* v. *Jeffress,* 4 Gratt. 472. There the decedent, in his life-time, assigned to the firm of E. T. Jeffress & Co. certain bonds for collection, and afterwards, in contemplation of death, declared his wish, which was taken down in writing by several witnesses present at the time,

that his friend, E. T. Jeffress, a member of the said firm, should have all the bonds of his in his possession. It was held, however, that the gift was void for want of a sufficient delivery, although the bonds were in the possession of the intended donee at the time. "It is not the possession of the donee," said the court, "but the delivery to him by the donor, which is material in a *donatio mortis causa*. The delivery stands in the place of nuncupation, and must accompany and form part of the gift. An after-acquired possession of the donee is nothing, and a previous and continuing possession, though by the authority of the donor, is no better." And as additional authorities for the proposition that a verbal gift, without delivery, cannot be sustained, even where the subject of the gift is in the possession of the donee. See *Shower* v. *Pilch,* 4 Exch. 477 ; S. C., 19 L. J. (Ex.) 113 ; *Case* v. *Dennison,* 9 R. I. 88 ; *Cutting* v. *Gilman,* 41 N. H. 147.

In *Lee's Ex'or* v. *Boak,* 11 Gratt. 182, the gift was held good, because there the bonds and other evidences of the debts forgiven in that case were actually delivered by the donor to the donee ; and so in *Morrison's Ex'ors* v. *Grubb,* 23 Gratt. 342, where the donor delivered to the donee a pocket-book containing the bonds in question, saying, "Here, Joe, take this, take it home with you and keep it" ; these words being construed as importing a gift, although the word "give" was not used.

Pomeroy says the cases upon the subject of a constructive delivery, many of which he cites, establish this criterion ; that the donor parts with all control and power of exercising dominion, while the donee obtains the exclusive power of taking physical possession and custody of the article, so that it is in fact placed under his sole dominion. 3 Pom. Eq. sec. 1149.

Viewed in the light of these principles, it is very clear that the gift asserted in the present case cannot be sustained. Here there has been no delivery either of the bonds themselves or of the means of obtaining them, and the case, as presented by the record, is simply that of an incomplete gift, which can be

enforced neither at law nor in equity. 1 Pars. Cont. (6th ed.) 234 *et seq.* Any comment upon the evidence or discrepancies in the statements of the witnesses in describing the subject of the alleged gift, is therefore unnecessary. We will remark, however, that these discrepancies illustrate the propriety and wisdom of the rule which makes delivery essential to the validity of a verbal gift.

The case of *Scott's Ex'or* v. *Scott,* 83 Va. 251, was referred to in the argument as an authority in support of the position of the appellees; but there is no conflict between that case and the views expressed in this opinion. In that case a father made several payments on a debt for which he was surety for his son; the evidence showing that he made them, as he declared, " as a gift and aid to his son." He died without ever having made any claim against the son, and took no evidence of indebtedness from him; and in a subsequent contest between the executrix and the son, it was held that there was no liability on the latter for the payments so made. In other words the money was paid for the avowed purpose of aiding the son, and with no intention of charging him with it. Hence there was no indebtedness to be given or forgiven, and nothing of which delivery could be made. The money was not given to the son, but was paid to the creditor, and having been paid under the circumstances mentioned, there was never an instant of time when the son was liable for it. That the case, therefore, is no authority for the decree of the circuit court in this case, or, in other words, for the proposition that a verbal gift of a bond or other chattel is good without delivery, is too obvious to require discussion.

Nor is the case affected by the declaration of the decedent to the witness, Wood, that he had given a bond against the estate of Judge Field to his niece, Mrs. Field. That the donor's declaration that he has given the article in question will not perfect a gift incomplete for want of a delivery is well settled. *Rockwood* v. *Wiggin,* 16 Gray (Mass.) 402. Or, to quote the apposite language of Judge Carr in *Ewing* v. *Ewing:* " If a host of wit-

nesses had proved that the decedent declared he had given the bond in question it would have been of no avail without some proof of delivery."

And equally without avail is the alleged subsequent recognition of the gift by the administrator. As was well said by the learned counsel for the appellant, the administrator had no more power to perfect the gift than he would have had to revoke it, if it had been completed by the decedent in his life-time. And as to the question of estoppel, alluded to in the argument at the bar, it is sufficient to say that no such case is made by the pleadings in the court below, and consequently the point is not a subject for consideration here.

The decree must be reversed, and an order entered dismissing the petition filed in the circuit court.

DECREE REVERSED.