PRESENT: Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ., and Koontz, S.J.

ALEXANDRA KNOP, ET AL.

v. Record No. 180329

PETER J. KNOP, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
August 1, 2019

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Ticonderoga Farms is a family company that owns nearly 1,000 acres of land in fast-growing Loudoun County. The shares in the company are owned by Peter J. Knop ("Father") and his three children. A dispute arose concerning what percentage of shares the children owned. The trial court concluded that -- although Mr. Knop intended to make gifts of stock to his children for estate planning purposes -- those gifts were never effectually made because they were never delivered to the children in the manner required by law. The trial court also rejected the children's estoppel argument. The children appeal from this ruling. For the reasons noted below, we agree with the trial court that the shares were never delivered to the children. Thus, under the law, the gifts were not completed. We further conclude that the trial court did not abuse its discretion in denying the children relief under equitable estoppel principles. Accordingly, we will affirm the judgment below.

BACKGROUND

When Ticonderoga Farms was incorporated, in 1982, Father owned almost 80% of the company. His wife, Diana Knop, and the three children, Alexandra, Peter R.Q., and William ("the children"), who were minors at the time, owned the remaining shares. Following a divorce, Diana transferred her interests to her former husband. By 1987, due to contributions by then adult children at the formation of the company and later transfers by Father, the children each

owned 9.08% for a total of 27.24% of the company. Father owned the remaining shares. The company's stock book contains stock certificate stubs showing that the children each have a 9.08% ownership interest in the company and that such shares have been delivered to the children.

James Cummings, the accountant for Ticonderoga Farms, prepared the Virginia and federal income tax returns for the company for tax years 1989-2007. He also prepared the tax returns for Father and the children. He testified that Father instructed him to make gifts of stock equivalent to the maximum gift tax exclusion to the children to avoid estate taxes. Cummings testified that he followed Father's directions and prepared Schedule K-1s[1] for the shareholders. These K-1s reflected the children's increased ownership shares and Father's decreased ownership share. The K-1s were filed with the Virginia Department of Taxation and the IRS as part of the company's income tax returns. Cummings relied on these K-1s to prepare personal tax returns for Father and the children. Father and the children filed their personal returns based on these K-1s. Father offered similar testimony, acknowledging that he intended to convey shares to them.

The forms filed with Ticonderoga's federal taxes show this rising percentage of ownership. Likewise, the forms filed in connection with Virginia taxes showed a rising percentage of ownership for the children and a decreasing ownership proportion for Father. By 2004, if the gifts were effective, the children's ownership interests in Ticonderoga had risen to a total of 44.061%, or 14.687% for each child. These ownership interests were recorded on the tax

---

[1] A Schedule K-1, also known as IRS Form 1065, is a document that a partnership files with the IRS to report a partner's share of the partnership's income, deductions, and credits, among other things. Dep't of the Treasury, Internal Revenue Service, Instructions for Schedule K-1 (Form 1065), at 1 (rev. Jan. 15, 2019), *available at* https://www.irs.gov/pub/irs-pdf/i1065sk1.pdf (last visited July 9, 2019).

returns for that year. The federal tax returns, which were also filed with the Virginia returns, were signed under penalty of perjury.

The children also introduced into evidence a variety of emails and corporate documents authored or signed by Father in which he acknowledged the transfers and the increases in the children's ownership interests. The ownership interests reflected in these emails and documents were consistent with the interests shown in the tax returns for the corresponding years. *Compare* Pl.'s Ex. 37 and Pl.'s Ex. 188A and B (1991 returns), *with* Pl.'s Ex. 47 and Pl.'s Ex. 198A (2001 return), *with* Pl.'s Ex. 77 and Pl.'s Ex. 201A and B (2004 returns). The intended gifts of shares, however, were never reflected in stock certificates. Father testified that he never prepared the stock certificates. No ledgers were produced showing transfers of the shares.

Years later, Father decided to sell or give away some of the property to create a scenic easement. The children opposed this course of action. Under the then-existing corporate bylaws, the sale of company's real property required the approval of 90% of the ownership interests. To circumvent this requirement, Father asserted that the gifts he made to the children in the 1990s and early 2000s were not completed because he did not prepare and deliver stock certificates to the children. In other words, the children each owned the same interests they held in 1987, i.e., 9.08% of Ticonderoga each, for a total ownership share of 27.24%. Father claimed an ownership share of 72.76% of the company. Under the Virginia Stock Corporation Act, a shareholder owning more than two-thirds of a corporation can convert the corporation to another form. *See* Code § 13.1-722.11(A)(5). If Father's assertion was correct, this would allow Father to convert Ticonderoga from a corporation to an LLC under the Act. In early 2015, Father noticed a series of shareholder and board of directors meetings where, relying on his claim to own 72.76% of Ticonderoga, he voted—over the children's objections—to convert Ticonderoga

3

to an LLC.  The operating agreement Father drafted for the LLC gave him total control of the company, including the ability to transfer its land without the 90% shareholder approval required by the corporate bylaws.

The children then filed a complaint in which they asked for a declaration that they each own 14.687% of Ticonderoga and that Father lacks the authority to sell Ticonderoga land without their consent.  Following a bench trial, the trial court found that the children "did not testify or present any evidence that they recalled ever actually receiving a certificate, saw a certificate, or lost a certificate."  App. 2456.  The court also observed that the corporate stock book contains stubs indicating that there were 227 shares for each child out of a total of 2500 shares.  The court noted that

> At various times, all of the [children] and certainly the [father] were in a position to update the corporate records to reflect their appropriate ownership.  They were, at a minimum, at times, all officers, at times directors, and [Peter R.Q. Knop] was actually the president for a number of years.
>
> The defendant was always active in the company, but the disarray of the company records cannot fall completely to the defendant.

The court credited the testimony of Mr. Cummings indicating that Father intended to give the children an ownership share greater than 9.08%.  The court concluded that the children had failed to meet their burden of proving a valid *inter vivos* gift of shares.

The court found as follows:

> While plaintiffs' evidence, including tax returns, clearly reflect the defendant intended to transfer some additional percentage of his ownership share of the farm[] to the plaintiffs for estate planning and tax purposes, none of that evidence persuasively shows that there was ever an actual or constructive delivery of that additional ownership share to plaintiffs such that the defendant was divested of all dominion and control over that property and that plaintiffs were invested with such dominion and control over the property.

4

The trial court concluded that, under Virginia law, including the Uniform Commercial Code (UCC) and this Court's decision in *Young v. Young*, 240 Va. 57 (1990), no valid gifts of shares above 9.08% had been made. After the children moved the court to reconsider, the court also rejected the children's argument that the father should be estopped, under the doctrines of equitable estoppel and quasi-estoppel, from denying the gifts because he acquiesced in them for years while leading the children to believe the gifts were completed. This appeal followed.

ANALYSIS

I. REQUIREMENTS FOR GIFTS OF CERTIFICATED SHARES OF STOCK.

Under Virginia law, an *inter vivos* gift is complete where (1) there is donative intent at the time of the gift and (2) there is "such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in [the] donee." *Taylor v. Smith*, 199 Va. 871, 874 (1958). Proof of each element is necessary. *Id.* Donative intent without delivery is insufficient to complete a gift. *Yancey v. Field*, 85 Va. 756, 759 (1889). "[T]he burden of proof rests upon [the donee] to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence." *Rust v. Phillips*, 208 Va. 573, 578 (1968).

The trial court found donative intent on the part of Father to give shares in Ticonderoga Farms to his children. The dispositive questions are whether he delivered the shares or can be estopped from denying that he gave the shares.

Code § 8.8A-102 distinguishes between a "certificated security" and an "uncertificated security" by providing that the former is "represented by an instrument," Code § 8.8A-102(a)(4), and the latter is "not represented by an instrument," Code § 8.8A-102(a)(18). By statute, "[d]elivery of a certificated security to a purchaser occurs when … the purchaser acquires

5

possession of the security certificate[.]" Code § 8.8A-301(a)(1).[2]  In *Young*, we examined

statutory requirements for gifts of certificated shares and concluded that, despite a father's stated

intent to donate shares to his daughters, the gifts were ineffective because "[t]he prerequisite

elements of delivery to, and acceptance by, the daughters, [we]re entirely lacking…."  240 Va. at

64.  As a consequence, "the disputed securities were never delivered to the daughters nor to

anyone designated by the daughters to receive them, [and] no *inter vivos* gift was ever made."

*Id.*  Code § 8.8A-301(a)(1) and *Young* supply the rule of decision with respect to delivery of a

gift of shares of certificated stock.

      A.      Recodification of the statute did not change its plain meaning or expand its scope.

The children point out that the General Assembly has amended the statute that was under

scrutiny in *Young*.  The statute we examined in *Young* provided that the "[t]ransfer of a

security . . . to a purchaser occurs *only* . . . at the time he or a person designated by him acquires

possession of a certificated security."  240 Va. at 63 (emphasis added).  The Code now provides

that "[d]elivery of a certificated security to a purchaser occurs when . . . the purchaser acquires

possession of the security certificate[.]"  Code § 8.8A-301(a)(1).  According to the children,

"[t]he omission of the word 'only' in § 8.8A-301 is significant."  We disagree.

"It is well-settled that we determine the General Assembly's intent from the words

contained in the statute."  *Virginia Broad. Corp. v. Commonwealth*, 286 Va. 239, 249 (2013)

(quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)).  "When a statute is unambiguous,

we must apply the plain meaning of that language."  *Appalachian Power Co. v. State Corp.

Comm'n*, 284 Va. 695, 706 (2012).  "[W]hen the language of an enactment is free from

---

     [2] A purchaser includes a "person that takes by purchase," including a "gift, or any other
voluntary transaction creating an interest in property."  Code §§ 8.1A-201(29), (30).

ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." *Brown v. Lukhard*, 229 Va. 316, 321 (1985). The plain language of the statute provides that "[d]elivery of a certificated security to a purchaser occurs when . . . the purchaser acquires possession of the security certificate[.]" Code § 8.8A-301(a)(1). The language of the statute does not leave the door ajar for any other mechanism of delivery applicable to the facts of this case.[3]

> B.    The children failed to prove a constructive delivery.

The children further argue that even if there was no actual delivery, "the income tax returns filed by Ticonderoga, [Father], and the children should be considered conclusive evidence of the constructive delivery and acceptance of [Father's] ownership interests." Appellant Br. at 28. A "constructive" delivery can occur even though the recipient of the gift has not come into physical possession of the item or title to the item. For example, we have noted, by way of illustration, that "the contents of a trunk, even when they consist of bonds or other choses in action, may be given by delivery of the key of the trunk, or goods *in transitu* by delivery of the bill of lading, if the donor's intention to make the gift clearly appears." *Yancey*, 85 Va. at 760. In those illustrations, the giver has relinquished control over the property and placed it in the hands of the recipient of the gift.

"The essence of delivery . . . is surrender of dominion and control of the gift by the donor." *Brown v. Metz*, 240 Va. 127, 131 (1990). With a constructive delivery, the donor may not have turned over the actual item, but the step taken, such as turning over the key to a trunk

---

[3] The report to the General Assembly concerning amendments to Article 8 and its recodification as Article 8.8A does not support the children's argument. *See* House Doc. No. 84, Report of the Joint Subcommittee Studying Proposed Modifications to the UCC to the Governor and the General Assembly of Virginia, at 3 (1994), *available at* https://rga.lis.virginia.gov/Published/1994/HD84/PDF (last visited July 9, 2019).

containing the item, is sufficient for surrender of dominion and control of the gift. *Yancey*, 85

Va. at 758 ("The authorities uniformly hold that to render a gift effectual, the thing given, *or the*

*means of obtaining it*, must be delivered to the donee, or to his agent, and accepted by him.")

(emphasis added).

Although Code § 8.8A-301(a)(1) requires the purchaser (or gift recipient) to "acquire[]

possession of the security certificate," we recognized in *Young* that the possession by the

purchaser or recipient of the gift "or a person designated by him" can constitute a delivery.

*Young*, 240 Va. at 63. Code §§ 8.8A-301(a)(2)-(3), providing for other methods of delivery, are

consistent with this principle. Subsection (2) provides that delivery of certificated securities may

occur when "another person, other than a securities intermediary, either acquires possession of

the security certificate on behalf of the purchaser or . . . acknowledges that it holds for the

purchaser." Similarly, subsection (3) permits delivery when "a securities intermediary acting on

behalf of the purchaser acquires possession of the security certificate. . . ." Importantly, in each

of these circumstances, the donor relinquishes control.

The children contend that Father's statements on various tax documents reflecting a

larger share of ownership by the children constitute a constructive delivery of certificated shares

of stock.[4] However, a statement on a tax return reflecting a gift of shares does not constitute a

relinquishment of control of certificated shares by the donor. Statements on tax returns are made

for purposes of assessing taxes. False or misleading statements may subject the person who

---

[4] In response to the children's claims about the statements of ownership made in tax returns, father responds that (1) Cummings testified that the ownership percentages reflected in the tax returns were wrong; (2) the children failed to produce amended tax returns; (3) Father did not sign the tax returns of the corporation; (4) the ownership percentages reflected in the tax returns inexplicably rose and fell; and (5) the children's ownership interests rose when they were running the company.

8

makes them to civil or criminal penalties. Such statements, however, do not relinquish control of property. Statements made on a tax return do not, therefore, satisfy the element of delivery.

A simple analogy illustrates the point. A father may tell his child that he is donating his car and transferring the car title to the child. In reliance on this assertion, the child submits documentation to the taxing authority reflecting the gift. The father may likewise submit tax records reflecting the gift. At all times, however, the father retains control of both the car and the title. The father never relinquishes control of the car and, in fact, continues to drive it. In that situation, the father may have made a false or misleading statement to both the child and the taxing authority, but it is readily apparent that those statements neither surrendered dominion and control of the vehicle nor vested dominion and control of the car in the child. Without that relinquishment, there is no delivery in the eyes of the law.

The children's theory of delivery via statements made in a tax return has no basis in the controlling statute. Additionally, as Father points out, "[t]he uncertainty that would ensue if ownership claims of certificated shares could be predicated on ancillary documents other than the certificate is patent." Appellee Br. at 28. Consequently, we affirm the trial court's ruling that, despite Father's stated intention to make gifts of certificated stock to the children, the gifts were never effectually made under Virginia law.

II.    ESTOPPEL AND QUASI-ESTOPPEL.

The children also invoke the doctrine of estoppel to argue that Father is precluded from disavowing the ownership shares shown in the tax returns. In particular, they invoke equitable estoppel and "quasi-estoppel."

> The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence.

9

*Princess Anne Hills Civic League, Inc., v. Susan Constant Real Estate Tr.*, 243 Va. 53, 59

(1992). Father offers a number of responses to this assertion, but the one we find dispositive is

that the children offered no evidence that they suffered any detriment from the statements in the

tax returns that reflect a higher percentage of ownership by the children. As Father argues, the

children offered no evidence that they "suffered any penalties, tax consequences or anything else

for that matter as a result of the statements in the [c]ompany's tax returns." Appellee Br. at 40.

The trial court pointed out from the bench, "[t]here's no evidence as to the tax benefit or the tax

penalty with respect to [the children]." App. 2042-43. The children did not offer their tax

returns into evidence. The children's arguments established the theoretical possibility of

detriment, but they offered no evidence of actual detriment. The children, who bore the burden

of proving equitable estoppel by clear and convincing evidence, did not carry their burden of

proving prejudice.

One of the children, Peter R.Q. Knop, notes that he placed certain assets in an irrevocable

trust in 2004, and that as a consequence he gave up control over his interest in the company.

First, there is no evidence that this was done in reliance on the tax returns filed by the

corporation that showed a greater share of ownership by the children. Peter R.Q. Knop testified

that he established the trust around the time he married to protect the farm in the event of a

divorce or his spouse wishing to dispose of the asset. Second, at the time he placed these assets

in trust, Peter R.Q. Knop had served as President of the company for five years and was in a

position to know what interests the stock ledger showed – and those ledgers showed his interest

to be 9.08%. Finally, a principal's placement of assets in trust is unlikely to be a source of injury

to the principal. The trust makes Peter R.Q. Knop the primary beneficiary during his lifetime.

Here, again, the children had to shoulder the burden of proving both detrimental reliance and

prejudice by clear and convincing evidence. The trial court rejected their equitable estoppel claim. The record fully supports the trial court's conclusion.

Finally, the children invoke the doctrine of "quasi-estoppel." The United States Court of Appeals for the Fourth Circuit, which has recognized the doctrine, explains it as follows:

> In order to constitute the estoppel, or quasi estoppel, by acquiescence, the party, with full knowledge or notice of his rights, must freely do what amounts to a recognition of the transaction, or must act in a manner inconsistent with its repudiation, or must lie by for a considerable time, and knowingly permit the other party to deal with the subject-matter under the belief that the transaction has been recognized, or must abstain for a considerable time from impeaching it, so that the other party may reasonably suppose that it is recognized.

*Ritter v. Ulman*, 78 F. 222, 223-24 (4th Cir. 1897).

Courts have described the doctrine as "amorphous," *Long v. Turner*, 134 F.3d 312, 318 (5th Cir. 1998), "somewhat nebulous," *Bartholomew v. Superior Court*, 417 P.2d 563, 567 (Ariz. Ct. App. 1966), and as "essentially a last-gasp theory under which a defendant who can point to no specific detrimental reliance . . . may still assert that [another party is] estopped from asserting allegedly contrary positions where it would be unconscionable for them to do so." *Schoonover v. Bonner Cnty.*, 750 P.2d 95, 98 (Idaho 1988). For the last four hundred years, quasi-estoppel has been a stranger to Virginia law. We decline to incorporate this amorphous, nebulous theory into Virginia law. Because Virginia law does not recognize quasi-estoppel, the trial court did not err in refusing to grant relief on that basis.

CONCLUSION

For these reasons, the judgment of the trial court will be affirmed.

*Affirmed.*

11