# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 88

Thomas M. Kruger and North Dakota
Safety Professionals, LLC,                                    Plaintiffs and Appellees

v.

Sally V. Goossen,                                            Defendant and Appellant

## No. 20200287

Appeal from the District Court of Mountrail County, North Central Judicial
District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jonathan P. Sanstead, Bismarck, N.D., for plaintiffs and appellees.

Kent A. Reierson (argued) and Lisa M. Six (on brief), Williston, N.D., for
defendant and appellant.

**Tufte, Justice.**

[¶1]   Sally Goossen appeals from a judgment determining Thomas Kruger's and Goossen's ownership interests in North Dakota Safety Professionals, LLC ("NDSP"). Goossen argues the district court erred in finding that she owns 45 percent of NDSP and that certain expenses were business expenses for NDSP and were not draws Kruger made from NDSP's account for his personal benefit. We affirm, concluding the district court's findings are not clearly erroneous.

I

[¶2]   Kruger and Goossen own NDSP. In 2017, Kruger and NDSP sued Goossen, requesting that the district court order dissolution of NDSP and seeking damages for conversion. Kruger alleged he owns a 55 percent interest in NDSP and is the President of the company, Goossen owns 45 percent of NDSP and is the Vice-President of the company, Goossen improperly converted over $200,000 from NDSP's checking account, and it was no longer practical to carry on the activities of NDSP because of Goossen's actions. Goossen counterclaimed and requested the court dissolve NDSP and order distribution of NDSP's assets based upon the parties' contributions to NDSP and the amount of the parties' prior draws on NDSP's checking account. Goossen alleged she has a 50 percent interest in NDSP, she is entitled to draw from NDSP's account, and the checks written for her personal benefit were properly allocated to her draw account.

[¶3]   The parties stipulated to certain facts and issues for the district court to decide at trial. The parties agreed there were three main issues for the court to decide:

> ISSUE ONE: Determine the ownership percentage by each of the two parties as partners in North Dakota Safety Professionals, LLC.
> ISSUE TWO: Determine the equality of the draws from the entity by the parties and, if unequal, determine if there is any sum owed by one of the two partners to the other.

ISSUE THREE: Determine the date of valuation and the value of [listed] assets . . . .

[¶4] After a bench trial, the district court found NDSP was dissolved on December 31, 2016, Kruger has a 55 percent ownership interest in NDSP, and Goossen has a 45 percent ownership interest. The court made findings about whether certain draws from NDSP's account were for personal expenses and the benefit of the individual parties, determined the total amount of each party's draws from NDSP's account, and ordered Goossen to pay Kruger $128,754.14 to equalize the parties' draws. Judgment was entered.

## II

[¶5] In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review and its conclusions of law are fully reviewable. *Titan Machinery, Inc. v. Renewable Res., LLC*, 2020 ND 225, ¶ 7, 950 N.W.2d 149. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶6] "In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations." *Titan Machinery*, 2020 ND 225, ¶ 7 (quoting *Gimbel v. Magrum*, 2020 ND 181, ¶ 5, 947 N.W.2d 891). The district court's findings are presumptively correct. *Titan Machinery*, at ¶ 7. "We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous." *B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 2007 ND 12, ¶ 7, 727 N.W.2d 270 (quoting *Buri v. Ramsey*, 2005 ND 65, ¶ 10, 693 N.W.2d 619).

## III

[¶7] Goossen argues the district court erred by finding she owns 45 percent of NDSP and by requiring distribution from NDSP to be made on a 55-45 basis.

She claims the court erred by requiring a specific document conveying or transferring an additional five percent interest to her to establish she owns 50 percent of NDSP. She contends the evidence, including tax documents and testimony from both parties, established the parties agreed and intended that she would have 50 percent ownership of NDSP. She also argues Kruger is estopped from claiming the income allocation was anything but 50-50.

[¶8]   "A contract is either express or implied. An express contract is one the terms of which are stated in words. An implied contract is one the existence and terms of which are manifested by conduct." N.D.C.C. § 9-06-01. But for either type of contract to be enforceable, there must be a mutual intent to create a legal obligation. *Kadrmas*, 2007 ND 12, ¶ 11. The parties' mutual assent is determined by their objective manifestations and not their secret intentions. *Id.* The parties' conduct and the surrounding circumstances are relevant in deciding whether the parties intended to form a binding legal agreement. *Kadrmas*, at ¶ 14.

[¶9]   Whether a contract exists is a question of fact. *Kadrmas*, 2007 ND 12, ¶ 7. "The trier of fact determines whether a contract is intended to be a complete, final, and binding agreement." *Id.* (quoting *Lonesome Dove Petroleum, Inc. v. Nelson*, 2000 ND 104, ¶ 15, 611 N.W.2d 154).

[¶10] The district court considered the parties' arguments, testimony presented at trial, and documentary evidence and found Goossen owns 45 percent of NDSP. The court found documentary evidence established Goossen was initially given a 45 percent interest in NDSP on August 13, 2013, and there were no documents transferring an additional five percent interest from Kruger to Goossen. The court found the 2013 tax statement was the first time there was a purported 50-50 ownership, and NDSP's tax accountant, Richard Diehl, testified the 2013 tax documents were prepared by another accounting agency and he relied on the 2013 tax forms for the ownership percentage in subsequent years. The court considered the Virginia Supreme Court's decision in *Knop v. Knop*, 830 S.E.2d 723 (Va. 2019), in the context of using tax returns to determine whether an ownership interest was transferred, and rejected

3

Goossen's argument that the tax returns supported her claim that she owns 50 percent of NDSP, stating:

> [W]hile the government taxing certain property may cause the government to eventually acquire the property for unpaid taxes, this Court is unaware of how a private individual claiming to own a certain property interest on their tax returns can cause one—at some time—to legally acquire the property—in this case a 5% membership interest of NDSP, LLC after August 13, 2013.

The court found Goossen owns 45 percent of NDSP and Kruger owns 55 percent, explaining:

> Based on the testimony and exhibits received during trial, this Court finds Kruger's testimony credible that he never transferred or relinquished control of any membership interest to Goossen after August 13, 2013. So this Court finds there is sufficient credible evidence showing Kruger has a 55% ownership interest of NDSP, LLC, while Goossen has a 45% ownership interest. This conclusion relies upon the above discussion, including—but not limited to—Diehl's testimony of his reliance on the 2013 tax return prepared by Whitewater Tax & Consulting which erroneously set forth the 50 – 50 ownership format and that both parties acknowledged there were no NDSP, LLC minutes or documents which show a post August 13, 2013 transfer of 5% membership interest to Goossen.

[¶11] A document was admitted into evidence entitled "Written Action in Lieu of Initial Meeting of Members and Governors of North Dakota Safety Professionals, L.L.C.," signed by Kruger and Goossen and dated August 13, 2013, showing Goossen had a 45 percent interest in NDSP and Kruger had a 55 percent interest. The language of that document is not ambiguous. But there was conflicting evidence about whether the parties agreed to transfer an additional five percent to Goossen.

[¶12] Kruger testified that he was the sole owner of NDSP when it was created in 2012 and that Goossen was an employee until she was added as an owner on August 13, 2013. He testified he owns 55 percent of the company because he was the person primarily responsible for establishing the company, Goossen

4

did not contribute any capital or purchase any interest in the company, he never sold Goossen any of his interest in the company, there was no other written action of NDSP that created a different ownership interest, and the parties' ownership percentages never changed after August 13, 2013.

[¶13] Goossen testified the August 2013 document showed she owned 45 percent of NDSP, but she did not read the document showing her interest and she assumed she was receiving 50 percent. She testified, "[I]f I would have realized it said 45/55 I probably would have disputed it at that time. I didn't read through it. I assumed it was 50/50 because that's what we were looking at as far as taxes and everything else." She testified it was her understanding that she was getting 50 percent and the K-1s showed a 50 percent interest. She testified she had a discussion with Kruger about her interest sometime after she signed the August 13, 2013 document, they discussed equal ownership, and they did not think they needed to redo the document showing a 45 percent interest because that document was only good for one year. She testified their discussion occurred after August 2013 and before the end of 2013.

[¶14] Documents related to NDSP's tax returns, including the schedule K-1, state each party owns 50 percent of NDSP, starting with the 2013 tax year. Diehl testified he did NDSP's tax returns for 2014-2016 and he sent both parties a K-1 each year. Diehl testified that when he first started doing NDSP's tax returns, he thought the parties each owned 50 percent of the company owing to information from the prior accountant, he just followed that each year after, and he sent the parties the K-1s. In a March 23, 2015 email, from Kruger to Diehl, Kruger said he was overdrawn from NDSP, asked what would be the best way to even things up for fiscal year 2014, and stated, "I believe the K-1 shows equal shares are to be distributed." Kruger testified about the email and whether he recognized that Goossen was to get equal shares, and he said he had been informed at that time that was what had been done and he did not object to her receiving 50 percent of the income, but he did not realize that the K-1 showed the parties' ownership interest.

[¶15] Goossen argues the district court erred by relying on *Knop*, 830 S.E.2d 723, as the sole support for its decision that ownership of NDSP was not 50-50.

5

She contends this case is different from *Knop* and the court erred in concluding she claimed the tax documents acted to convey or transfer an interest to her.

[¶16] In *Knop*, 830 S.E.2d at 724, minority shareholders of a corporation brought an action against a majority shareholder to determine what percentage of shares each minority shareholder owned, arguing the majority shareholder had gifted additional shares to each minority shareholder. The court explained there must be a donative intent at the time of the gift and actual or constructive delivery divesting the donor of all control over the property to complete an *inter vivos* gift under Virginia law. *Id.* at 726. The minority shareholders argued that statements on various tax documents reflecting the minority shareholders' larger share of ownership constituted constructive delivery of certificated shares of stock. *Id.* at 728. The court held there was a donative intent to gift shares, but statements on a tax return reflecting the gift of shares did not constitute a relinquishment of control of the shares by the donor and therefore did not satisfy the element of delivery, which was required under statutory law for gifts of certificated shares of stock. *Id.* at 726, 728.

[¶17] The court's holding in *Knop* is not particularly relevant to the issues before the court in this case, including whether there was an intent and agreement to transfer to Goossen an additional five percent interest in NDSP. This Court has indicated tax documents may be used as evidence of a change in a party's ownership interest. *See Larson v. Midland Hosp. Supply, Inc.*, 2016 ND 214, ¶¶ 16, 18, 891 N.W.2d 364. Although there was documentary evidence that supported Goossen's claim that Kruger agreed she would own 50 percent of NDSP, including the K-1s, there was also testimony explaining that there were errors in the documentary evidence and that the tax documents did not reflect an intent to transfer an additional five percent interest to Goossen. The parties gave conflicting testimony about the existence of an agreement to transfer an additional five percent interest in NDSP to Goossen. Furthermore, the district court considered all of the evidence presented, including the parties' testimony, and did not rely solely on *Knop* to determine Goossen's ownership interest.

6

[¶18] The district court was given a choice between two permissible views of the evidence. The court determined Kruger's testimony was credible that he never transferred an additional five percent to Goossen. The district court's credibility determinations will not be second-guessed on appeal. *In re Estate of Finstrom*, 2020 ND 227, ¶ 13, 950 N.W.2d 401. Although there is evidence in the record on which we could affirm a decision in favor of Goossen, there is also evidence in the record capable of supporting the court's decision. In such a situation, our standard of review dictates that we do not substitute our judgment for that of the district court or reexamine findings of fact made upon conflicting testimony. Evidence supports the court's finding Goossen failed to establish that there was an agreement and that Kruger intended to transfer an additional five percent ownership to Goossen after the initial transfer in August 2013.

[¶19] Goossen also argues the doctrine of equitable estoppel applies and prevents Kruger from claiming that Goossen owned only 45 percent of NDSP and that distributions should be paid on a basis other than 50-50. After examining the record, we were unable to find where Goossen raised this issue before the district court. The district court did not make any findings about whether Kruger was estopped from claiming Goossen owned less than 50 percent of NDSP. Issues raised for the first time on appeal will not be considered. *Fahey v. Fife*, 2017 ND 200, ¶ 10, 900 N.W.2d 250.

[¶20] We conclude the district court's findings about the parties' ownership interests in NDSP are not clearly erroneous.

IV

[¶21] Goossen argues the district court erred in determining $72,450 of the expenses labeled "Tom Training Materials," "Office Supplies WY," and "WY Office Set Up" are chargeable business expenses, which reduced the amount of Kruger's draws. She contends there was no evidence that any specific expenses within these categories were legitimate business expenses of NDSP and there was only evidence that expenses for Kruger's Wyoming office were not expenses for NDSP.

[¶22] The district court considered the parties' arguments about whether certain expenses should be allocated to a specific party's draw account and calculated each party's total draws from NDSP's accounts for August 13, 2013, through December 31, 2016. The court found that $72,450 of the 2014, 2015, and 2016 expenses labeled "Tom Training Materials," "Office Supplies WY," and "WY Office Set Up" are chargeable business expenses and that Kruger's draw account should be reduced by $72,450. After determining the total amount of each party's draws from NDSP's accounts, the court calculated the amount the parties were entitled to draw based on their percentage of ownership to determine whether either party should be required to pay the other party to equalize the draws. The court found Kruger had $417,343.76 in draws and Goossen had $575,561.51 in draws. The court ordered Goossen to pay Kruger $128,754.14 to equalize their draws.

[¶23] A list of Kruger's expenses was admitted into evidence. Kruger testified that he moved to Wyoming approximately four years ago, while he was still providing services to NDSP. Kruger testified he worked and provided services to NDSP from his home office in Wyoming and the expenses categorized as "Office Supplies WY" appeared to be mainly expenses for his Wyoming home office. He testified the expenses categorized as "Tom Training Materials" appeared to be expenses for setting up his home and office in Wyoming, and NDSP was responsible for paying for the training materials he used to conduct his classes. He testified "Wyoming Office Set Up" expenses were also for his Wyoming home office. He testified that if the expenses were for training materials they should be allocated to the business and that if they were expensed to the business on the taxes they should have been directed strictly to the business.

[¶24] Both Doug Tracy, Kruger's accountant, and Diehl, NDSP's accountant, testified the expenses listed in these categories were all deducted on NDSP's tax return as NDSP's business expenses and if they were business expenses they should not be included in the total of Kruger's draws. Evidence established Goossen handled NDSP's bookkeeping, including maintaining financial records and inputting data into the accounting software. Diehl testified that he had NDSP's profit and loss statement from its accounting

8

software when he was preparing the company's taxes and that he would discuss the expenses with Goossen. He testified that he is sure he would have questioned Goossen about these amounts related to the Wyoming expenses when he was preparing NDSP's tax returns and that he would not have included these amounts as business expenses unless he talked to her and was comfortable they were business expenses. Goossen testified these expenses were not for NDSP, there was no training done for NDSP in Wyoming, and she did not realize they were included as business expenses on NDSP's taxes.

[¶25] Evidence in the record supports the district court's findings that the expenses in these categories were business expenses included on NDSP's tax returns and should not have been included in Kruger's draws. The court's finding that $72,450 of the 2014 through 2016 expenses labeled "Tom Training Materials," "Office Supplies WY," and "WY Office Set Up" are chargeable business expenses is not clearly erroneous, and the court did not err by failing to include these expenses in the total amount of Kruger's draws.

V

[¶26] We affirm the judgment.

[¶27] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte